

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-3909
Re: Liability of a producer
or purchaser for natural
gas production taxes un-
der Art. II, H.B. 8, 47th
Legislature, 1941 (Art.
7047b, V.A.C.S.), when the
gas is produced in another
State and imported into
Texas.

      This is in reply to your recent request for an
opinion concerning Article II of House Bill 8, Forty-seventh
Legislature, 1941 (codified as Article 7047b of Vernon's
Annotated Revised Civil Statutes of Texas), commonly known
as the "natural gas production tax" law. Your request reads
as follows:

      "This department has two fact situations
on which we wish your opinion as to the appli-
cability of the levies under House Bill No. 8,
Regular Session of the Forty-seventh Legisla-
ture:

      "1. A gas company is engaged solely in
the transportation and sale of natural gas in
Texas. It owns no gas wells. It produces no
gas either directly or indirectly. It purchases
gas from producers in Texas and from producers
in other states. It sells this gas wholesale
to industrial plants and other corporations who
retail the gas to commercial and residential
consumers in Texas.

      "Is this company required to collect and
report a tax on that gas which it buys either
in Texas or in Louisiana?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, page 2

"If the foregoing question is answered in the negative, then is such company required to pay the tax provided in Section 8 of Article II of the Omnibus Tax Law?

"2. A company is a producer in the State of Louisiana but transports the gas from Louisiana to Texas and makes sale of the gas in Texas. It may or may not own gas wells in Texas. It may purchase gas from producers in Texas, but its sales are made within the State of Texas.

"Is this company required to report and pay the tax on the gas produced in Louisiana?"

That part of Article II of House Bill 8, Forty-seventh Legislature, 1941 (codified as Article 7047b, V.A.C.S.), with which we are concerned in this opinion, reads as follows:

"Sec. 1. (1) There is hereby levied an occupation tax on the business or occupation of producing gas within this State, computed as follows:

"A tax shall be paid by each producer on the amount of gas produced within this State, and on the amount of gas produced in another State and imported into this State upon the first sale thereof in intrastate commerce, equivalent to five and two tenths (5.2) per cent of the market value of all gas including casing-head gas produced and saved within this State, and of all gas sold if produced in another State and imported into this State, at the market value thereof, as and when produced, or as and when imported.

"The market value of gas produced in another State and imported into this State shall be the average value at the mouth of the well of like gas sold within this State as revealed by reports made to the Comptroller for the quarter immediately preceding the quarter in which such gas was imported and sold. Provided, however, that the amount of the tax on sweet and

Honorable George H. Sheppard, page 3

sour natural gas shall never be less than eleven one hundred fiftieths (11/150) of one (1) cent per one thousand (1,000) cubic feet on sweet and sour natural gas sold or produced and saved in this State, and not thereafter lawfully inject- ed into the earth in the State of Texas, for the following purposes:  (a) storage thereof; (b) recycling; (c) repressuring; (d) lifting oil and not thereafter; (e) lawfully vented or flared in connection with the production of oil.

"The market value of gas produced in this State shall be the value thereof plus any bonus, or premium, or anything of value paid therefor, or any sum of money that such gas will reason- ably bring if produced and sold in accordance with the laws, rules and regulations of this State, provided that notwithstanding any other provision herein to the contrary, where gas is processed for its liquid hydrocarbon content and the residue gas is returned by recycling methods to the same gas-producing formation underlying the land from which the gas is pro- duced, the taxable value of such gas shall be three fifths (3/5) of the gross value of all products extracted, separated and saved from such gas.

"In case gas is sold for cash the tax shall be computed on the producers' gross receipts of such sale; and in case the whole or a part of the consideration for the sale of gas is any portion of the products extracted from such gas, the tax shall be computed on the gross value of the products received plus all other things of value received by the producer, except in case of gas processed by recycling operations.

"In determining the market value of gas for the purpose of computing the tax due, there shall be excluded the value of residue gas law- fully injected into the earth in the State of Texas for the following purposes:  (a) storage thereof; (b) repressuring; (c) lifting oil; and also (d) gas lawfully vented or flared in con- nection with the production of oil; save and

Honorable George H. Sheppard, page 4

except however, if any gas so injected into the earth is sold for such purposes, then the market value of the gas so sold shall not be excluded in computing the tax. All liquid hydrocarbons that are recovered from gas by means of a separator or by other nonmechanical methods shall be taxed at the same rate as oil as levied by Article I of this Act.

"(2) The tax hereby levied shall be a liability of the producer of gas and it shall be the duty of each such producer to keep accurate records in Texas of all gas produced, making monthly reports under oath as hereinafter provided.

"(3) The purchaser of gas shall pay the tax on all gas purchased and deduct the tax so paid from the payment due the producer or other interest holders, making such payments so deducted to the Comptroller of Public Accounts by legal tender or cashier's check payable to the State Treasurer; such moneys so deducted from payments due producers for the payment of this tax shall be held by the purchaser in trust for the use and benefit of the State of Texas and shall not be commingled with any other funds held by said purchaser, and shall be remitted to the State Treasurer in accordance with the terms and provisions of this Article." (Underscoring ours)

"Sec. 2. (1) For the purpose of this Act 'producer' shall mean any person owning, controlling, managing, or leasing any gas well and/or any person who produces in any manner any gas by taking it from the earth or waters in this State, and shall include any person owning any royalty or other interest in any gas or its value whether produced by him, or by some other person on his behalf, either by lease, contract, or otherwise.

"(2) 'First purchaser' shall mean any person purchasing gas from the producer.

Honorable George H. Sheppard, page 5

"(3) 'Subsequent purchaser' shall mean any person who purchases gas for any purpose whatsoever, when said gas is purchased from any person other than the producer."

"Sec. 2a. (1) The tax herein imposed on the producing of gas shall be the primary liability of the producer as hereinbefore defined, and every person purchasing gas from producer thereof and taking delivery thereof at or near the premises where produced shall collect said tax imposed by this Article from the producer. Every purchaser including the first purchaser and the subsequent purchaser, required to collect any tax under this Article, shall make such collection by deducting and withholding the amount of such tax from any payments made by such purchaser to the producer, and remit same as herein provided. . . ."

"Sec. 8. Should the provision herein with reference to the basis to be used in calculating the tax on gas imported into this State be declared for any reason to be discriminatory or unconstitutional or for any reason invalid, then there is hereby levied on all gas imported into this State a tax of five (5) per cent of the market value of said gas based upon the first sale of said gas within this State." (Underscoring ours)

This statute levies "an occupation tax on the business of producing gas." It is a species of excise tax known as an occupation tax. A statement in regard to the classification of taxes is found in 26 Ruling Case Law 34, as follows:

"Taxes fall naturally into three classes, namely, capitation or poll taxes, taxes on property, and excises."

An explanation of excise taxes is made in the same discussion in 26 Ruling Case Law 34, as follows:

". . . , excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act,

Honorable George H. Sheppard, page 6

the enjoyment of a privilege, or the engaging
in an occupation. The obligation to pay an
excise is based upon the voluntary action of
the person taxed in performing the act, en-
joying the privilege, or engaging in the occu-
pation which is the subject of the excise and
the element of absolute and unavoidable de-
mand is lacking. An excise is usually enforc-
ed by prohibiting the performance of the act
which is the subject of the tax until the tax
is paid."

The engaging in an occupation, to-wit, the producing
of gas by taking it from the earth, is taxed under the terms
of this statute. It is a settled rule of law that it is a
violation of the Fourteenth Amendment to the Constitution of
the United States for a State to tax an act or occupation per-
formed outside of the boundaries of the State. Louisville &
Jefferson Ferry Co. v. Kentucky, 188 U.S. 385; Provident Sav-
ings Life Assurance Society v. Kentucky, 237 U.S. 103. A dis-
cussion of this rule of law is found in 26 Ruling Case Law 295,
as follows:

"The power to levy an excise upon the per-
formance of an act or the engaging in an occu-
pation does not depend upon the domicil of the
persons subject to the excise, nor upon the
physical location of the property used in con-
nection with the act or occupation taxed, but
depends upon the place in which the act is per-
formed or occupation engaged in. Thus a state
may constitutionally tax the performance of a
certain act within its limits, and may enforce
payment of the tax even when the act is perform-
ed by nonresidents of the state with respect
to property which has never been within its
boundaries, provided the act which is subject
to the tax is performed within the state, and
conversely an excise cannot constitutionally
be imposed upon the performance of an act out-
side the limits of the governmental unit by
which the excise is levied. . . ."

We believe it is apparent that no tax can be collected under
the terms of the statute levying "an occupation tax on the busi-
ness of producing gas" by virtue of gas produced in Louisiana
or anywhere else outside of the State of Texas.

506

The Legislature must have been aware of the rule of law and constitutional limitation stated above, and therefore inserted special words in this statute that were intended to impose a tax based on gas produced in another state and imported into the State of Texas. These words are the ones underscored in the above quoted statute, and which we repeat here as follows:

"Sec. 1 (1) . . .

"A tax shall be paid by each producer . . . on the amount of gas produced in another State and imported into this State upon the first sale thereof in intrastate commerce, equivalent to five and two tenths (5.2%) per cent of the market value . . . of all gas sold if produced in another State and imported into this State, at the market value thereof . . . as and when imported.

"The market value of gas produced in another State and imported into this State shall be the average value at the mouth of the well of like gas sold within this State as revealed by reports made to the Comptroller immediately preceding the quarter in which such gas was imported and sold.

" . . . .

"Sec. 8. Should the provision herein with reference to the basis to be used in calculating the tax on gas imported into this State be declared for any reason invalid, then there is hereby levied on all gas imported into this State a tax of five (5) per cent of the market value of said gas based upon the first sale of said gas with this State."

In regard to gas produced in another State, Section 1 bases the tax "upon the first sale thereof in intrastate commerce;" and, the only person said Section imposes the tax upon is the "producer." A 'producer' is defined in Section 2 as "any person owning, controlling, managing, or leasing any gas well, and/or any person who produces in any manner any gas

Honorable George H. Sheppard, page 8

by taking it from the earth or waters in this State. . . ."
Thus, we see an inconsistency in the statute by virtue of the
fact that Section 1 imposes upon the "producer" those taxes
based on gas produced in another state, while Section 2 limits
a "producer" to a party who produces gas in this State. If
Section 1 is construed to impose the tax on the "producer,"
and the "producer" is deemed the party who takes the gas from
the earth or the party who owns or controls the gas well re-
gardless of the definition, we do not see how the tax based on
said imported gas can be enforced, because the producer might
not be within the jurisdiction of this State. The gas might
have passed through the hands of several successive owners by
the time it reaches Texas and a first sale occurs in Texas.
For the reasons given in the fore part of this opinion to the
effect that a state cannot impose a tax on acts beyond its
boundaries, we do not see how the words of Section 1, insofar
as it concerns gas produced in another state, can be given ef-
fect, those words being that the tax "shall be paid by the
producer." The words of Section 1 do not justify imposing
on anyone other than the "producer" the tax based on gas pro-
duced outside of the State. We do not see how Section 1 will
support the levy of a tax based on gas produced beyond the
boundaries of the State of Texas.

The only other part of the statute that deals with
gas produced outside of Texas is Section 8, quoted above.
Does it levy a tax that can be enforced? We think it does
not. Said Section 8 provides that in the event "the basis
to be used in calculating a tax on gas imported into this
State be declared for any reason to be . . .invalid" then there
shall be "levied on all gas imported into this State a tax of
five (5) per cent of the market value of said gas upon the
first sale of said gas within this State." That is all of the
provision, - it does not say anything else. Who (what person)
is this tax levied against? Who is supposed to pay it, the
seller or the buyer? The statute does not say. We think
said Section 8 is fatally defective, and therefore wholly in-
operative, because of said failure on the part of the Legisla-
ture to prescribe who shall pay said tax.

Our answer to your first question is that the com-
pany you ask about is not required by virtue of said Article
7047, V.A.C.S., to collect a tax on, or by virtue of, the gas
it buys that was produced in Louisiana or in any other state
outside of Texas; and likewise said company is not required
by virtue of said statute to pay such a tax if the gas was pro-
duced outside of Texas. However, said company is required to

Honorable George H. Sheppard, page 9

collect such a tax if the gas was produced in Texas, by deduct-
ing the amount of the tax from the purchase price and paying
said tax to the Comptroller in the manner prescribed by stat-
ute, if the same has not already been paid.

Our answer to your second question is that the com-
pany you ask about is not required by virtue of said statute to
report and pay a tax on, or by virtue of gas produced in Louis-
iana or in any other state outside of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED SEP 15, 1941

FIRST ASSISTANT
ATTORNEY GENERAL.

By _____
Cecil C. Rotsch
Assistant

CCR:db


APPROVED
OPINION
COMMITTEE
BY_____
CHAIRMAN